UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

DOMINIQUE LIND,

    Plaintiff,

v.

ARAMARK UNIFORM & CAREER
APPAREL, LLC f/k/a ARAMARK
UNIFORM SERVICES, INC.

    Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, DOMINIQUE LIND, by and through her undersigned counsel, sues the Defendant, ARAMARK UNIFORM & CAREER APPAREL, LLC f/k/a ARAMARK UNIFORM SERVICES, INC., and alleges as follows:

### **JURISDICTION AND VENUE**

1. This is an action for damages and to remedy violations of the rights of MS. LIND under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, ARAMARK UNIFORM & CAREER APPAREL, LLC f/k/a ARAMARK UNIFORM SERVICES, INC. ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

4. Plaintiff is a woman, and, as such, Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992, as amended ("FCRA"), because the terms, conditions, and privileges of her employment were altered because of her gender.

5. Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission.

8. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9. Plaintiff was issued a Notice of Right to Sue on November 29, 2022. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

10. The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. The Plaintiff began working for the Defendant in November 2019 as an Assistant General Manager/Service Manager.

12. As Assistant General Manager/Service Manager, Plaintiff's primary duties and responsibilities included overseeing the service department.

13. Plaintiff was qualified for her position as an Assistant General Manager/Service Manager in that she had experience as Assistant General Manager/Service Manager and/or she had all necessary training to perform her job duties and responsibilities.

14. Prior to December 2020, the Plaintiff did not experience any issues in the workplace, nor did she receive any formal or informal performance reviews documenting concern for performance or professionalism.

15. On December 11, 2020, Mr. Jeremy Fournier, General Manager, and the Plaintiff were having one of their usual "one-on-one" meetings face-to-face, held privately in his office. Mr. Fournier asked the Plaintiff if she was aware of anything unethical taking place within the Market Center that he should be made aware of. The Plaintiff reminded him of a scenario she had previously reported on multiple occasions to Mr. Fournier, which included Mr. Cesar Cantelli, Route Representative, and Mr. Oreste Fraga, District Manager, failing to follow policy and properly secure the Market Center upon closing. Prior to this date, Mr. Fournier had refused the Plaintiff's attempts to proceed with written discipline, so again the Plaintiff requested his support and approval, which he brushed off. They proceeded with their usual one-on-one topics and the meeting ended shortly after.

16. Later that day, Mr. Fournier called the Plaintiff into his office. This meeting was held privately in his office in a one-on-one setting. Mr. Fournier said, "so I'm just going to cut to

the chase. I tried to give you a chance earlier to come clean, but you didn't. I've been told that you are in a relationship with Zac." Mr. Zac Cadore was a Route Sales Support hourly-employee who had recently submitted his resignation the Friday prior, on December 4, 2020. The Plaintiff was surprised by the accusation, as Mr. Cadore and the Plaintiff had spent time in group settings outside of work just as other managers and their subordinates had, but they were not in a relationship. Mr. Fournier continued with the same line of questioning, ultimately saying that he had to report the allegations to Human Resources.

17. On December 14, 2020, Mr. Fournier called the Plaintiff into his office and alerted her that Mr. Scott Goble, Vice-President of Operations, was on the phone. Mr. Goble said that the Plaintiff was not in trouble, but that they had to complete an investigation about the allegations of a relationship between the Plaintiff and Mr. Cadore. Mr. Goble stated that the Plaintiff had led Mr. Fournier to believe that Mr. Cadore and she had an intimate relationship. The Plaintiff objected to that characterization of her conversation with Mr. Fournier. The Plaintiff provided the same answers to Mr. Goble as she had to Mr. Fournier, but additionally informed Mr. Goble that other Department Managers spent time with subordinates outside of work. The Plaintiff questioned why the Defendant was investigating her and provided Mr. Goble with her theory, that the basis for an investigation was because the Plaintiff was a woman. Mr. Goble sent the Plaintiff home so that they could conduct an investigation, telling her that Human Resources would be in touch. The Plaintiff later learned that Mr. Cadore was not sent home and was allowed to continue work as scheduled until his final date of employment.

18. Later that day, Mr. Fournier texted the Plaintiff requesting her "official statement in writing" addressing Mr. Fournier's perception and how he was "led to believe" that the Plaintiff had an intimate relationship with Mr. Cadore. In addition, he requested details regarding

interactions outside of work (i.e., who, what, when, where, why). The Plaintiff emailed her statement to Mr. Fournier later that evening. In the Plaintiff's statement, she stated that the Defendant did not question time spent outside of work amongst management and their subordinates until now. The Plaintiff stated that she felt that the Defendant was questioning her due to being a woman since the other instances involved male superiors and their subordinates. The Plaintiff addressed the Defendant's team's hostile morale and that her ideas to improve this (i.e. a team outing, paid for by the company) had been discounted on multiple occasions due to prior unfortunate circumstances involving male and female interactions (i.e. prior sexual harassment investigations involving Mr. Fournier).

19.     On December 17, 2020, while the Plaintiff was still on a leave of absence, Mr. Doug Kaiser, Regional Director of Human Resources, called the Plaintiff to discuss her meeting with Mr. Fournier. The Plaintiff told Mr. Kaiser that it would be best to communicate in writing as there had already been significant misinterpretation. Mr. Kaiser responded, "I can get this resolved super-fast, or we can delay it and drag it out." The Plaintiff assured Mr. Kaiser that her intention was not to "drag it out" as this was her career they were speaking about, but rather to keep this as professional as possible by avoiding further misinterpretation, hence the Plaintiff's request to communicate in writing. He reluctantly agreed. Before the conversation ended, Mr. Kaiser questioned why the Plaintiff had claimed that she was being targeted for being a woman, and also asked what she was referring to in her statement about "sexual harassment." The Plaintiff reminded Mr. Kaiser that she would be happy to respond in writing. The call ended shortly after, and Mr. Kaiser did not send any emails with additional questions.

20. The Defendant allowed the Plaintiff to return to work on December 21, 2020. Mr. Kaiser did not send written questions regarding the Plaintiff's formal written statement. The Defendant did not investigate any further into Plaintiff's complaint of gender discrimination.

21. In the weeks prior to the Plaintiff's leave of absence and her complaint of discrimination, Mr. Fournier had informed the Plaintiff that he would take a few tasks off her hands, and he would complete the onboarding for all five new-hires as well as finalize the time-sensitive staff schedule for the holidays. At the time it was an effort to work together, as the Defendant was desperate to retain employees, and he felt it was best for the Plaintiff to focus her efforts on supporting the Management Staff during the already hectic time of year (holidays, product shortages, staffing shortages, combined with the COVID-19 pandemic). Suddenly, upon returning to work, this "team morale" was gone, and the Defendant tasked the Plaintiff with completing the staff schedule on Monday December 21st for the then-current work week of Tuesday December 22nd through the 25th. This meant that the Plaintiff had employees unsure of their tasks for the following day. Normally, preparing the staff schedule is completed the Friday in advance of the scheduled week. After the Plaintiff's leave of absence and complaint of discrimination, Mr. Fournier left the schedule overdue and incomplete for her return. This task would usually have been completed further in advance than a normal week due to running double routes to cover the holidays (essentially running over-time).

22. That afternoon, Ms. Esperanza Rodriguez, the Market Center's local Human Resources Coordinator, called the Plaintiff to inform her that two new hires were ready for their lunch. The Plaintiff contacted Mr. Fournier and he stated he did not have time and that the Plaintiff would have to handle it. The Plaintiff further inquired what the plan was for these two new hires as they needed to schedule which routes they would shadow for their training. Mr. Fournier

responded that he "didn't have one" and requested that the Plaintiff contact Mr. Christopher Fredericks, the Region's Director of Service Operations, for advice on how to proceed. Prior to the Plaintiff's complaint of discrimination, Mr. Fournier and the Plaintiff would have discussed and agreed on how to handle this without any involvement from senior-level management. The Plaintiff was immediately discouraged, again reminded that the teamwork between Mr. Fournier and her had vanished. The Plaintiff could not approach Mr. Fournier for support as she once had prior to her complaint of discrimination.

23. The Plaintiff continued with the schedule but later found out from two employees that Mr. Fournier had already completed the schedule, despite having been directed to quickly build a new one for approximately 45 – 50 employees. Mr. Fournier set the Plaintiff up to fail by giving her this time-consuming, "emergency" task in retaliation for her complaint of discrimination.

24. On December 22, 2020, Mr. Shaun Smedley, District Manager, reported an incident with new-hire, Mr. JP Juarez. Mr. Smedley reported overhearing Mr. Juarez threaten that he would, "slit John's throat" (another Route Representative). The Plaintiff called Mr. Fournier, who again brushed her off and requested that the Plaintiff contact Mr. Goble and Mr. Kaiser. When the Plaintiff expressed her concerns to Mr. Goble and Mr. Kaiser, they told her that Mr. Juarez was "probably joking." The Plaintiff's initial suggestion was that the Defendant investigate the comment made but the Defendant ignored her concerns. The Plaintiff followed up by reiterating to both Human Resources and Mr. Goble that a threat of violence should be acted upon immediately. Finally, they gave the Plaintiff permission to investigate. At the conclusion of the Plaintiff's investigation, she decided to terminate the employee due to the serious nature of the threat.

25. On a morning conference call on December 28, 2020, in front of management staff and additional department heads, Mr. Fournier incorrectly blamed the Plaintiff for inventory discrepancies. Mr. Fournier had never made this kind of accusation against the Plaintiff before. When the Plaintiff tried to speak, he interrupted her and did not permit her to respond. Had Mr. Fournier let the Plaintiff speak, she would have reminded him that the discrepancies were due to a back-order of product from the Defendant's only distributor and that preventative measures for further discrepancies were already taken.

26. Due to Mr. Fournier's retaliatory behavior, the Plaintiff emailed Mr. Goble requesting to speak. He replied requesting to know what the Plaintiff wanted to talk about, and she said that she was not pleased with the circumstances of her return and that going from minimal responsibility to full responsibility during the holidays was overwhelming.

27. In conversation with Mr. Goble that evening, the Plaintiff spoke of her concerns regarding Mr. Fournier's changed behavior and that she did not feel the same support from prior to the accusations about Mr. Cadore and her complaint of gender discrimination documented in the Plaintiff's formal written statement provided December 14, 2020. The Plaintiff stated that prior to her leave, Mr. Fournier and her were a team, but recently Mr. Fournier has tasked the Plaintiff with unrealistic responsibilities and continued to push her to utilize senior-level management for support instead of him. The Plaintiff further informed Mr. Goble of her attempt to drive policy for securing the Market Center with their closing policy, yet Mr. Fournier had refused to allow the Plaintiff to proceed with disciplinary action for non-compliance for Mr. Fraga and Mr. Cantelli (as she requested on multiple occasions over the prior six months, in addition to their one-on-one on December 11th). To that point in time, the Defendant had not held either one accountable for their

insubordination, and instead Mr. Fournier was penalizing the Plaintiff. Mr. Goble provided no real feedback and insisted that the Plaintiff keep the conversation between him and her.

28. The Defendant continued to undermine the Plaintiff's efforts and did not give her the support she needed to fulfill her job duties. When other male employees undermined the Plaintiff, Mr. Fournier did nothing to stop it.

29. On December 31, 2020, Mr. Fraga told the Plaintiff that Mr. Canteli, Route Representative, "stays late just to mess with her." When the Plaintiff would express her concerns regarding employees to Mr. Fournier, he would state that he would not support investigations for disciplinary actions for insubordination and failure to perform.

30. Right before the New Year of 2021, the Plaintiff texted each District Manager privately, as well as other Department Heads and Mr. Fournier, and wished them a Happy New Year. Mr. Fournier called the Plaintiff and told her not to text him outside of business hours. The Plaintiff reminded him that she was still working as it was 6:20 p.m., and he immediately cut her off and said, "I'm not going to argue about this. Only text me when it's about work and during business hours". Meanwhile, there were multiple messages in the group chats and private chats outside of business hours between multiple parties, including Mr. Fournier, and prior to this date there had been no issue. Since the Plaintiff is a woman who complained about gender discrimination, Mr. Fournier was retaliating against her and applying different rules to her. The messages in the team group chat continued even past 9:00 p.m. that evening, even going as late as 12:06 a.m. New Year's Day.

31. From January 20, 2021 to February 15, 2021, the Plaintiff was out from work because she was sick with Covid-19.

32. On Friday, January 22, 2021, Mr. Fournier emailed the Plaintiff regarding the week's performance, highlighting his notes in red for performance failures, even though she reported as sick three out of five days that week.

33. The Plaintiff forwarded the email to Human Resources to report that "Mr. Fournier was not trying to work alongside her anymore and instead resorting to petty actions through emails and Zoom videos". Examples of such discriminatory and retaliatory actions include Mr. Fournier's changed behavior following the Plaintiff's return to work, in which he refused to complete their usual one-on-one's while being physically present in the same room with the Plaintiff, instead insisting on video calls but still having team meetings in-person with management staff throughout the pandemic. Mr. Fournier also refused to let the Plaintiff be in the same room with him while interviewing management candidates, even though they had completed countless interviews while in the same room throughout the pandemic. Furthermore, prior to the Plaintiff's complaint of discrimination, Mr. Fournier did not document the one-on-ones in detail via email but was now following up by emailing long "Service Metrics" emails. The Plaintiff also stated that she felt that Mr. Fournier was retaliating against her because he was upset that the investigation concluded with the Plaintiff being able to return to work. Mr. Kaiser replied that he was sorry to hear that the Plaintiff was ill and that she needed to focus on getting better and refrain from working. In the past the Plaintiff had been allowed to work remotely, and Mr. Kaiser failed to address any of the complaints she made regarding Mr. Fournier's retaliatory actions.

34. On February 12, 2021, the Plaintiff spoke to Ms. Katherine Thevara, coordinator for Human Resources and in charge of approving the Plaintiff's return to work from sick leave for Covid-19. The Plaintiff informed Ms. Thevara that she had not yet heard from anyone in response to her emailed complaint and requested she follow up with Mr. Kaiser to confirm approval for her

return to work. Ms. Thevara later confirmed that Mr. Kaiser had approved the Plaintiff's return to work and no further follow up was needed regarding her emailed complaint.

35. The Plaintiff returned to work Monday, February 15, 2021.

36. On February 23, 2021, Mr. Fraga contacted the Plaintiff to report a staffing shortage after the designated time for same day callouts. At that point in time, Mr. Fournier had again assigned the Plaintiff the responsibility of the staff schedule. The Plaintiff still reported this shortage via text to Mr. Fournier to keep him in the loop as the Defendant had a Staff Meeting later in the day where this employee would not be present. In response, Mr. Fournier texted the Plaintiff to cover this shortage and run the route herself, disregarding that he had requested the Plaintiff take responsibility for the schedule. By this time in the day, it was a safety issue due to the length of time the Plaintiff or alternative employees would have been working and operating a vehicle, otherwise the Plaintiff would have volunteered, so she declined the task. All additional staff were already on route so the work would need to wait until the following day. Further, the Defendant had recently allowed District Managers on multiple occasions within just 60 days prior to do the opposite, holding them to a different standard from herself, and the Plaintiff knew that Mr. Fournier was making a conscious effort to be retaliatory towards her.

37. Shortly thereafter, the Plaintiff spoke again with Mr. Fraga, the reporting District Manager with the staffing shortage, to discuss the matter in further detail. After the Plaintiff called Mr. Fournier in an attempt to inform him that Mr. Fraga and her had agreed upon a resolution while ensuring the consideration of current staffing, safety of any affected employees, and the well-being of the Market Center and its Customers. As the Plaintiff began to speak, Mr. Fournier interrupted her. Even though Mr. Fournier had recently confirmed the Plaintiff's role as Service Manager included overseeing staffing and scheduling, he would not allow the Plaintiff to speak,

insisting that he "had it figured out" and in an unprofessional and condescending tone stated, "it's alright Dominique, don't worry about it, I got it". Mr. Fournier refused to let the Plaintiff be a part of the solution, interfering with her role and responsibilities as Service Manager, and chose to cover the route himself.

38.     After the Plaintiff's call with Mr. Fournier, the Plaintiff called Mr. Kaiser and restated her concerns regarding Mr. Fournier, which to this date had not yet been addressed, from Senior Management nor Human Resources, as previously requested on three attempts. The Plaintiff informed Mr. Kaiser that prior to the investigation, Mr. Fournier never communicated via email in the manner in which he had begun since the Plaintiff's complaint of discrimination. The Plaintiff also explained that, since her complaint, she was no longer allowed in Mr. Fournier's office whereas other people were seen entering his office. The Plaintiff stated that Mr. Fournier would interfere with her job duties, and she was not allowed to make decisions that she normally would have. Mr. Kaiser and the Plaintiff also discussed how in the past Mr. Fournier had the Plaintiff play as a "mediator" between himself and another female member of management in which there was animosity due to a previous sexual harassment claim that in one way or another involved Mr. Fournier. Mr. Kaiser and the Plaintiff discussed how this female manager was transferred to another Market Center at Mr. Fournier's request, another example of his unwillingness to work with who complained about discrimination. The Plaintiff also explained to Mr. Kaiser that the Defendant was holding her to a different standard than the men. Mr. Fournier requested that the Plaintiff cover staffing shortages herself, even after the Market Center's deadline for callouts. Mr. Fournier was inconsistent and had not required this of other members of Management who were male. Despite Mr. Fournier not allowing the Plaintiff to make decisions and continuing to undermine her, the Defendant held the Plaintiff accountable for her team's

performance, of which she did not receive control or authority to provide disciplinary action when the team was out of line. Mr. Kaiser listened and when he did speak, he made excuses for Mr. Fournier's discriminatory and retaliatory behavior and supported this behavior because it was "part of the job". Because the Plaintiff had made multiple attempts to receive support or mediation from Senior Management and Human Resources, she informed Mr. Kaiser that she did not feel comfortable returning to work with Mr. Fournier's retaliatory behavior and would be taking a personal day (leave of absence), awaiting his guidance on the next steps.

39. Later that day, February 23, 2021, the Plaintiff emailed another formal complaint of discrimination to Mr. Kaiser and Mr. Goble. Mr. Kaiser responded back that they would review the Plaintiff's complaints and get back to her.

40. The Plaintiff was asked to meet with Mr. Goble at the Market Center on March 1, 2021. In attendance was Ms. Rodriguez, Human Resources Coordinator and Mr. Kaiser on the phone. Mr. Goble made excuses for Mr. Fournier's behavior including saying that Mr. Fournier changed the Plaintiff and his meetings from in person to Zoom due to the pandemic. However, this was not true as the Defendant had done in person meetings during the entire pandemic, both private and in group settings. Other employees were allowed to go into Mr. Fournier's office with no problem, but Mr. Fournier kicked out the Plaintiff when she attempted. Throughout the meeting, the Defendant simply claimed that Mr. Fournier was just "doing what he was told" by senior management. The Defendant claimed that the Plaintiff was insubordinate and terminated her employment.

41. To make matters worse, Mr. Fournier has a history of sexual harassment claims while working for the Defendant. Mr. Fraga also had a problem working with women which had been previously reported to Mr. Fournier by the Plaintiff and another female manager. In addition,

on a conference call with Mr. Fournier and Mr. Fraga, it was suggested that Mr. Cantelli was uncomfortable with the Plaintiff because she is a woman and "that's how old school Cubans are." On one occasion, the Defendant asked the Plaintiff to minimize her use of emojis via group text messages with the team although men were allowed to do so. Male employees and managers fraternize outside of work, including Department Heads, and yet they were not accused of intimate relationships and investigated and placed on leave.

42. The Defendant investigated the Plaintiff because she is a woman and placed her on leave, and then retaliated against for reporting that the basis of the entire investigation was discriminatory because she is a woman.

43. The Plaintiff supported Mr. Fournier in everything he asked of her. The Plaintiff worked in excess of 55 hours per week, frequently arriving prior to, and leaving after, Mr. Fournier as well as her direct reports and worked holidays. However, as detailed, Plaintiff dealt with constant challenges from an all-male staff of tenured Route Representatives and District Managers who undermined her at every turn.

44. Prior to the Defendant's discriminatory actions, Mr. Goble even went so far as to provide a written statement of appreciation to the Plaintiff's mother on November 17, 2020. In this statement, Mr. Goble referred to the Plaintiff as a "dynamic leader" who "has courageously managed and excelled in the daunting times."

45. The Defendant does not question other members of management who associated with their subordinates. The reason the Defendant did not question other individuals was because they were not women. The Plaintiff was NOT in a relationship with the accused.

46. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

## COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Gender)**

47. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 46, inclusive, as though same were fully re-written here.

48. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Defendant discriminated against Plaintiff on the basis of her gender, female.

49. Mr. Fournier, Mr. Kaiser and Mr. Goble, and Ms. Rodriguez at all times relevant, were acting within the course and scope of their employment for Defendant.

50. Because Plaintiff is a female, Defendant discriminated against her and refused to take any action to prevent the discrimination.

51. Upon information and belief, similarly situated male employees are not treated in the same manner as Defendant treated Plaintiff.

52. Upon information and belief, similarly situated female employees are held to a different standards than male employees.

53. Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII which resulted in Defendant discriminating against Plaintiff.

54. Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII.

55. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights

Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees.

WHEREFORE, Plaintiff hereby requests that this Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with Title VII of the Civil Rights Act of 1964, §706(g); attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Gender)

56. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 46, inclusive, as though same were fully re-written here.

57. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

58. Plaintiff is a female, and therefore a member of a protected class.

59. Mr. Fournier, Mr. Kaiser and Mr. Goble, and Ms. Rodriguez at all times relevant, were acting within the course and scope of their employment for Defendant.

60. Because Plaintiff is a female, Defendant discriminated against her and refused to take any action to prevent the discrimination.

61. Upon information and belief, similarly situated male employees are not treated in the same manner as Defendant treated Plaintiff.

62. Upon information and belief, similarly situated female employees are held to a different standards than male employees.

63. At all relevant and material times, Defendant failed to comply with the FCRA.

64. The discrimination of Plaintiff by Defendant was caused by Defendant being aware that Plaintiff is a female.

65. At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was a female.

66. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by the Defendant.

67. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

68. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her being a female in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

69. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she is a female, in violation of the FCRA.

70. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff being a

female. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her gender.

71. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendant to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Retaliation)

72. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 46, inclusive, as though same were fully re-written here.

73. Plaintiff had the right to voice her grievances that Defendant was discriminating against her.

74. When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

75. Mr. Fournier, Mr. Kaiser and Mr. Goble, and Ms. Rodriguez at all times relevant, were acting within the course and scope of their employment for Defendant.

76. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

77. Plaintiff has engaged the undersigned attorney to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests this Court declare that Defendant's termination of Plaintiff was unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, grant Plaintiff judgment against Defendant to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with Title VII; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

78. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 46 inclusive, as though same were fully re-written here.

79. Plaintiff had the right to voice her grievances that she was being discriminated against.

80. When Defendant terminated the Plaintiff, it retaliated against her for exercising her rights.

81. Mr. Fournier, Mr. Kaiser and Mr. Goble, and Ms. Rodriguez at all times relevant, were acting within the course and scope of their employment for Defendant.

82. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

83. Plaintiff has engaged the undersigned attorney to prosecute her claim and is entitled to recover her attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests this Court declare that Defendant's termination of Plaintiff was unlawful retaliation in violation of the FCRA, grant Plaintiff judgment against Defendant to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendant's discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 27th day of February, 2023.

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff